## Case No. 8,393.

### LITTLE v. ALEXANDER.

[1 Hughes, 177.] [1]

Circuit Court, W. D. North Carolina. Dec. Term, 1874. [2]

BANKRUPTCY—FRAUDULENT PREFERENCE — JUDGMENT BY DEFAULT—STAY LAWS.

1. Where doubt arises whether a transaction is bona fide or not under sections 5128 and 5129 of the Revised Statutes of the United States (section 35 of the bankruptcy act), a United States circuit court in which a bill is filed to set aside such a transaction may, in its discretion, refer the question of bona fides to a jury in a case where an involuntary petition in bankruptcy has been filed, and the bankrupt has not had the privilege of a jury.

2. For the circuit court as a court of equity has full jurisdiction over a bill brought to set aside a transaction impeached as fraudulent under the 35th section, to declare the same void, and to enjoin the parties from taking or pursuing proceedings in other courts, touching the same transaction, as well perpetually as temporarily.

[This was a bill by William P. Little, assignee, against T. L. Alexander, to set aside an alleged fraudulent transaction.]

On the 1st day of January, 1869, John R. Alexander was largely indebted to various creditors, and had not property sufficient to pay his debts, and these facts were known to himself and the defendant, T. L. Alexander. John R. Alexander was justly indebted to the defendant, and gave his promissory note, executed on the 1st of January, 1869, in renewal of former bona fide notes which evidenced such indebtedness. An action at law was commenced on the renewed note on the 16th day of March, 1869, in the superior court for Mecklenburg county; "judgment for the want of an answer" was entered at spring term, 1869, of said court; this judgment was duly docketed on the 19th day of May, 1869; an execution on the same was issued on the 17th of June, and was levied on the lands of John R. Alexander on the 14th day of August, 1869; and this defendant was about to enforce a sale of said land when a writ of injunction in this cause was granted. Some of the other creditors of John R. Alexander had commenced actions upon their debts and failed to obtain judgment at said spring term, because a defence was put in by Alexander, which, according to the course and practice of the court, delayed a trial of such causes. John R. Alexander was duly adjudged a bankrupt in the district court of Cape Fear, upon a petition filed by creditors on the 1st of September, 1869, within a period of four months after the judgment of T. L. Alexander was obtained and docketed.

DICK, District Judge. The renewal of the note on the 1st of January, 1869, was a bona fide transaction, and in no way gave a preference to T. L. Alexander over other cred-

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
[2] [Reversed in 21 Wall. (88 U. S.) 500.]

itors, which can be regarded as fraudulent at common law, by the laws of this state, or under the bankrupt act [of 1867 (14 Stat. 517)]. The statute of this state (usually called the stay law) in relation to debts contracted previous to the 1st day of May, 1865, was unconstitutional, and was so declared by the supreme court of this state at January term, 1869, in the case of Jacobs v. Smallwood, 63 N. C. 112. All creditors of J. R. Alexander, whether they hold old or new notes, had like remedies in law, and were entitled to stand upon equal footing in the court at spring term, 1869; and if any legal rights were denied a creditor by the ruling of a judge, he has no just cause to complain of another creditor who obtained an honest advantage by pursuing the lawful course and practice of the court.

An insolvent person merely allowing a judgment to be taken for the want of an answer, by which one creditor obtained a preference over other creditors, is not an act of bankruptcy under the statute, and the judgment is not per se fraudulent and void. The omission to plead must be voluntary and with intent to defraud the general creditors, by giving a preference to a particular creditor, and these facts are to be proved by direct testimony, or they may be inferred from the circumstances attending the transaction. If the circumstances under which the judgment by default was allowed by the debtor were sufficient to constitute an act of bankruptcy, then the creditor who received such judgment or was benefited thereby, within a period of four months before proceedings in bankruptcy were filed, knew, or had reasonable cause to believe, that the debtor subsequently declared a bankrupt was insolvent, and that such judgment was allowed by the debtor in fraud of the bankrupt act, then such judgment in contemplation of a court of bankruptcy is void, and the assignee is entitled to such relief in the circuit or district courts of the United States against the judgment as will enable him properly to administer the assets of the bankrupt.

In the case before us the intent of preference and all collusion is positively denied in the answer and depositions by both parties to the judgment, and there is no direct evidence sustaining contrary averments, and both of said parties are proved to be men of good credit and character. The facts that the relation of father and son existed between said parties, that the son obtained judgment by default when other creditors of the father were prevented at the same term of the court from obtaining judgment because pleadings for that purpose were entered, and other incidental circumstances mentioned in the evidence filed in the cause, have a strong tendency to show that the allegations of fraud and collusion made by the plaintiff are well founded.

It is, however, insisted by defendant that the judgment was obtained according to the course and practice of the court; that it is not fraudulent at common law, or under any of the laws of this state, and such transaction is not essentially immoral or dishonest; that the bankrupt law, in refusing to allow a person declared to be a preferred creditor any portion of the assets of the bankrupt, is highly penal and ought to be strictly construed, and in a case like the one before us there should be no intendments but those which are fully sustained by the evidence, or which arise from strong legal inference. This conflict of inferences arising out of the evidence, renders it proper that the controverted questions of fact should be determined by a jury. It is therefore ordered that proper issues should be prepared by the counsel of the plaintiff presenting the questions of fact as above indicated and be submitted to a jury at the next term of this court, to be heard and determined upon the pleadings and proofs filed in this cause.

Various questions of law were presented in the argument which can now be determined, so that the case may be placed in a condition to be finally disposed of at the next term when the verdict of the jury is rendered on the issues submitted. The counsel of the defendant insists, "that the court, being restrained by the process act of 1793 [1 Stat. 333], cannot grant the relief to stay proceedings in the state court." To determine this question we must briefly consider the nature and extent of the equitable jurisdiction of this court. The circuit courts of the United States are created and invested with jurisdiction by acts of congress, and in all cases to which the judicial power of the United Stats may extend that jurisdiction both in law and equity may be made superior and exclusive. In a certain class of cases the jurisdiction of these courts is made concurrent with the jurisdiction of the state courts. The federal and state courts are separate and independent tribunals, and in all cases where they may exercise concurrent jurisdiction they carefully avoid a conflict by uniformly observing the well-settled rule that the court that first takes possession of the controversy, or the property in dispute, must be allowed to dispose of it finally without interference or interruption from the co-ordinate court. In all cases where the jurisdiction of the federal courts is made original and exclusive, it is also necessarily superior, and all actions of state courts upon such questions are regarded as nullities by the federal courts.

How far this judicial power of the United States may be extended under the constitution is always a question for the legislative wisdom and discretion of congress, in enacting a statute on the subject, and the constitutionality of such statute, when questioned, can only be determined by the judicial department of the general government. The United States circuit courts within the limits of their authority as prescribed by statute,

are invested with such equitable jurisdiction as is usually exercised by a court of chancery; and in all cases coming within their cognizance, where equitable elements are involved, may restrain persons within their jurisdiction from proceeding in any of the courts of law of the United States, or in any foreign court; so that they may adjust and determine all equities between the litigant parties. This injunctive relief against proceedings in another court is not affected by any prohibition directed to such court, but by process restraining the plaintiff personally from taking further steps. The writ of injunction in no way affects or interferes with the action of the court in which the proceedings are pending; it assumes no superiority over such court, or denies its jurisdiction. 2 Story, Eq. Jur. § 875; Adams, Eq. 195.

If the act of March 2d, 1793, had never been passed, a circuit court of the United States, in exercising its equitable jurisdiction as other courts of chancery, would hardly have issued a writ of injunction directed to a state court. It may be, that said act was intended to prevent a writ of injunction from being issued to a party to prohibit him from carrying on proceedings in a state court; but certainly such statutory restraint can only apply where the state court has full and concurrent jurisdiction with the federal court of the parties and subject-matter in dispute. The original and exclusive jurisdiction of the United States courts would amount to but little, if they had no power to maintain, secure, and enforce it by proper process against persons who seek to evade, or who openly disregard and defy their authority.

The constitution invests congress with the authority to establish uniform bankrupt laws; and where that authority is exercised, the act of congress supersedes all state legislation on the subject, and all rights and liabilities subsequently arising under such bankrupt act can only be heard, adjusted, and determined in the courts of the United States, unless otherwise provided in such act. A national bankrupt law is a supreme law of the land, and the courts of this state are as much bound to observe its provisions as if it had been enacted by our state legislature. Under the bankrupt act, proceedings in bankruptcy must be commenced in the United States district courts, and such courts have full and complete jurisdiction, both in law and in equity, over all matters relating to the settlements of the estates of bankrupts, and for such purposes do not need the active assistance of any other court.

Congress, however, in its wisdom has seen proper to confer upon circuit courts, concurrent jurisdiction with the district courts of the same district in certain cases where the title of property of the bankrupt is in dispute, or the claim of the assignee to the assets is denied, embarassed, or resisted; and where liens and priorities are to be ascertained, adjusted, and enforced, by the methods usually resorted to by courts of chancery. After consulting many of the adjudged cases referred to by counsel, making a fair and reasonable construction of the statute, and keeping in view the purposes for which the bankrupt system was established, we are well satisfied that this court, in the exercise of its equitable jurisdiction, can declare void any transfer of the property of a bankrupt which is fraudulent under the bankrupt act, and may, by writ of injunction, restrain any party to such fraud from attempting in any manner to carry out the fraudulent transaction.

The subject of controversy in this case comes fully within the jurisdiction of this court. A docketed judgment under the laws of this state is a security for money, and has the force and effect upon the land of the judgment debtor of a mortgage after the time of redemption has passed (Perry v. Morris, 65 N. C. 221), and comes within the meaning of the 35th section of the bankrupt act. If the jury at the next term, in passing upon the issues directed to be submitted, shall find such a state of facts as will authorize us to pronounce the judgment in question in this case fraudulent and void, we shall not hesitate to issue a writ of injunction to protect the rights of bona fide creditors, and prevent guilty parties from deriving any benefit from a fraudulent transaction.

The objection to the plaintiff's bill for the want of proper parties cannot be sustained. It appears that the plaintiff, as assignee, offered the land in question for sale, and after consultation with the creditors of the bankrupt, and for the purpose of securing a fair price for said land, requested Robert D. Whitley to bid at the sale for the benefit of the creditors. At the sale the said Whitley was declared to be the last and highest bidder, but no conveyance has been made to him. He was merely an agent, and has no personal interest in the matter. The general rule in a court of equity upon this question is, persons must be made parties to a suit, who are interested in the subject-matter in dispute, whose rights may be affected by the proposed decree, or whose concurrence is necessary to a complete arrangement. Adams, Eq. 3, 12. A person who merely acts as the agent of another in purchasing at a sale the property in dispute, has no interest in the subject, and is not a necessary party. In such a case all difficulty may be avoided by the agent filing a written renunciation of all interest in the suit before a final decree is made. Daniell, Ch. Prac. 191; Ayers v. Wright, 8 Ired. Eq. 229. The injunction in this case is continued until the case is heard upon the verdict of the jury on the issues directed to be submitted.

[NOTE. This case was taken by appeal of the assignee to the supreme court. Mr. Justice Miller delivered the opinion of the court, in which

he said: "The circuit court in this case submitted the question of fraudulent preference to a jury, but with the opinion of that court in the case, as found in the record, the jury was probably misled as to the law. At all events, in such issues from chancery submitted to the jury their verdict is not conclusive, and we think the intent to secure a preference in this case by means of this judgment, both on the part of the bankrupt and the judgment creditor, so clear, that we feel bound to reverse the decree and to remand the case with instructions to enter a decree in favor of plaintiff. that the judgment of T. L. Alexander is void as against the assignee, and is no lien on the property of the bankrupt in the hands of his assignee." 21 Wall. (88 U. S.) 500.]